# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CAUSE NO.: 1:06-CR-23-TS |
| | ) | |
| MELVIN B. TAYLOR | ) | |

## OPINION AND ORDER

On April 18, 2008, a jury convicted the Defendant, Melvin B. Taylor, of conspiring with others to possess with intent to distribute more than five kilograms of cocaine, and with knowingly possessing a firearm in furtherance of, and using and carrying a firearm during and in relation to, that drug conspiracy. The Defendant asserts that, pursuant to Federal Rule of Criminal Procedure 33, he should be granted a new trial because Codefendants Michael Alexander and Vernell Brown have provided him with post-trial statements that constitute newly discovered evidence.

## BACKGROUND

### A. Indictment and Adjudications of Guilt

On May 24, 2006, the Government charged Melvin B. Taylor, along with co-conspirators Marlyn J. Barnes, Michael D. Alexander, Theodis Armstead, Herbert Hightower, and Vernell Brown, with conspiring to possess with intent to distribute more than five kilograms of a mixture or substance containing a detectable amount of cocaine. (Indictment, DE 53.) Barnes, Armstead, and Taylor were also charged with possessing a firearm in furtherance of the charged conspiracy. The Indictment was the result of an undercover drug sting in which a federal agent posed as a drug courier willing to help the Defendants rob a shipment of cocaine that the undercover agent

was supposed to be transporting from Texas to a stash house in Fort Wayne, Indiana. The Government's theory of the case was that Barnes, who had the initial contact with the undercover agent to discuss robbing the shipment, recruited Alexander, Hightower, and Taylor, and that Taylor then recruited Armstead and Brown. All six of the Defendants came together at a Knight's Inn in Fort Wayne to further plan and carry out the robbery. They were arrested the next day after the undercover agent told them that the shipment was at the stash house in Fort Wayne and they drove cars loaded with guns, bullet proof vests, homemade masks, gloves, and duct tape to a storage facility where they anticipated picking up a van as part of the robbery plan.

After the initiation of criminal proceedings, Defendants Hightower and Alexander were the first to enter guilty pleas. (Hightower Plea Agreement Dec. 6, 2006, DE 126; Alexander Plea Agreement Feb. 1, 2007, DE 141.) On September 18, 2007, the remaining four Codefendants proceeded to trial. On the second day of trial, before the introduction of evidence, the Defendants informed the Court that Barnes, if he was tried separately from the other Codefendants, was willing to testify that Taylor, Brown, and Armstead did not come to Fort Wayne to assist in the conspiracy alleged in the Indictment. After Barnes verified this in open court under oath, the Court granted a mistrial to give Armstead, Brown, and Taylor an opportunity to move to be tried separately from Barnes. After granting the motion to sever, the Court scheduled Barnes' trial, which would be followed by a second trial for the remaining Codefendants.

Defendant Barnes proceeded to trial, and a jury found him guilty of conspiracy and possessing a firearm in furtherance of the conspiracy. (Barnes's Verdicts entered Feb. 7, 2008, DE 241.) Out of the remaining three Defendants who were to be tried jointly, Armstead and Brown pleaded guilty shortly before their scheduled trial date, leaving Taylor as the only

remaining Defendant yet to tried or to plead guilty. (Armstead Plea Agreement, March 10, 2008, DE 252; Brown Plea Agreement March 12, 2008, DE 256). One month after entering their guilty pleas, Armstead and Brown testified for the Government at Taylor's trial. Hightower also testified, as he had during Barnes's trial. The testimony of all three witnesses supported the Government's theory of the case and was consistent with the other evidence presented at trial. Barnes, however, testified on behalf of Taylor, stating that Taylor was not in Fort Wayne to take part in the robbery and that the Kel Tec firearm other witnesses linked to Taylor actually belonged to Barnes. On April 18, a jury returned guilty verdicts on both counts of the Indictment against Taylor, as well as on a forfeiture allegation.

**B.     Michael Alexander**

On April 28, 2008, the Court sentenced Alexander to 78 months of imprisonment and 5 years of supervised release. This sentence, which is below the mandatory minimum, was the result of an agreed motion related to his cooperation. Alexander's Plea Agreement required him to testify truthfully at any trial at which the Government called him. Although the Government did not call Alexander as a witness against Barnes, who is his brother, or against Taylor, where his testimony would have been merely cumulative, Alexander received the benefit for agreeing to testify truthfully. Consistent with his Plea Agreement with the Government, Alexander also received sentencing benefits related to the drug amount used to calculate his offense level, acceptance of responsibility, and no increased punishment for a prior conviction under 21 U.S.C. § 851.

A letter that Taylor attaches to his first Motion for New Trial, filed on October 20, 2008,

begins, "My name is Michael Alexander and I am writeing [sic] this letter of my own free will." (DE 398-2.) The letter states that Alexander did not choose to testify at trial or go to trial himself because he was misinformed by his lawyer and feared enhancements for prior convictions. He states that his guilty plea should have had no bearing on Taylor and Barnes, that no drug amount was "ever mentioned in this entire case," that Taylor was in Fort Wayne to visit his cousin and uncle and planned to return home the next morning, and that Taylor fell asleep during the hotel meeting. The letter concludes, "I would like to put my testimony on record. I believe this is new evidence in the case and I have tried several time[s] to relay this to my lawyer. Please respond as is necessary; Thank you very much." (DE 398-2.) The bottom of the letter contains the name Michael Alexander and the cause number of this case.

C.  Vernell Brown

On April 17, 2008, Brown testified for the Government at the trial of Codefendant Taylor. He testified that Taylor told him about Barnes's plan to get some money by stealing a load of drugs, which he believed was cocaine. Brown admitted that he was interested in taking part in the plan, so he made arrangements to ride with Taylor from Gary to Fort Wayne. Brown stated that on May 4, 2006, Taylor picked him up with Armstead already in the car, and they drove to Fort Wayne. According to Brown's testimony, Taylor met up with Barnes at a Knight's Inn, and Barnes started showing them some guns and bullet proof vests, told the others that he was waiting on his guy who was coming to the hotel, and explained some more details about the shipment. Brown then left the hotel with Taylor and Armstead to get something to eat and meet with Taylor's uncle, who worked at the restaurant where they ate. When they returned to the

4

hotel after dinner, the agent (whom Brown did not know to be an undercover federal agent) came to the hotel and met with all six of the Defendants. Brown testified about the discussion between the agent and the Defendants, which was consistent with the Government's recording of the meeting. Brown also testified about the Defendants' discussions after the undercover agent left, including the roles they would fill during the robbery and how they would split the drugs between them. Brown's testimony also covered the events of the next day when the Defendants drove to the storage unit where they were arrested. Counsel for Taylor cross-examined Brown.

One month after testifying at Taylor's trial, and less than one week before his scheduled sentencing date, Brown filed a Notice of Mistake. He stated that he was withdrawing his plea and all prior testimony because he entered the guilty plea "under duress and feared life long imprisonment." (Notice of Mistake 2, DE 315.) After several rounds of briefing and hearings on the issues of Brown's waiver of counsel and withdrawal of his guilty plea, the Court issued an Opinion and Order finding that Brown did not show a fair and just reason for withdrawing his guilty plea. (Oct. 1, 2008, Opinion and Order, DE 383.) The Court found that the Rule 11 plea colloquy was not deficient, that Brown's counsel did not provide advice that rendered his plea involuntary, that Brown fully acknowledged the terms of the plea, and that Brown entered the plea as a calculated action intended to lessen his exposure to punishment. The Court ultimately concluded that Brown's statements regarding coercion did not overcome the presumption of veracity that attached to his plea colloquy statements (including statements that his plea was not the result of threats or coercion and that he was satisfied with his counsel's representation) and set the matter for sentencing.

On October 9, 2008, the Court sentenced Brown to the mandatory minimum 120 months

5

of imprisonment and 8 years of supervised release. The sentence was consistent with Brown's Plea Agreement with the Government.

In Taylor's Amended Motion for New Trial, filed on October 31, 2008, he states that he received a document in the form of an affidavit signed by Brown. In the affidavit, Brown reasserts his claim that he entered his guilty plea under coercion and duress "of fear for life long imprisonment." (Aff. ¶ 1, DE 410-2.) Brown argues that neither he nor Taylor had any knowledge of any drug amount or drug type, that they did not have any discussion about or knowledge of the alleged crime, and did not come to Fort Wayne to participate in it. (Aff. ¶¶ 3, 5.) Brown contends that if he is called to testify, he would testify consistent with his affidavit.

## DISCUSSION

**A.**     **Federal Rule of Criminal Procedure 33**

The Defendant makes his motion pursuant to Federal Rule of Criminal Procedure 33, which provides that the "court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). If the motion for new trial is grounded on any reason other than newly discovered evidence, it must be filed within seven days after the verdict. Fed. R. Crim. P. 33(b)(2). If the motion is grounded on newly discovered evidence, it must be filed within three years after the verdict. Fed. R. Crim. P. 33(b)(1). Because Taylor's Motions were filed well outside the seven-day limit, he may only present grounds for a new trial that are based on newly discovered evidence.

## B. Newly Discovered Evidence and Alleged False Testimony

To be granted a new trial based on newly discovered evidence, the defendant must show that the evidence (1) came to his knowledge only after trial; (2) could not have been discovered sooner had the defendant exercised due diligence; (3) is material and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a retrial. *United States v. Bender*, 539 F.3d 449, 455–56 (7th Cir. 2008) (citing *United States v. Reed*, 2 F.3d 1441, 1451 (7th Cir. 1993), and *United States v. Van Daal Wyk*, 840 F.2d 494, 500 (7th Cir. 1988)). "A motion for new trial premised on an allegation of false testimony is subject to a more focused analysis," which asks first whether the court is "reasonably well satisfied that the testimony given by a material witness is false." *Id.* at 456. If the first element is met, the court asks whether the "jury might have reached a different conclusion absent the false testimony or if it had known that testimony by a material witness was false," and whether the defendant was "taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after trial." *Id.; see also United States v. Lanas*, 324 F.3d 894, 902–03 (7th Cir. 2003).

### 1. *Vernell Brown*

Because the Court is not "reasonably well satisfied" that the testimony given by Brown at Taylor's trial was false, Taylor is not entitled to a new trial on the basis of newly discovered evidence alleging the use of perjured testimony. *Van Daal Wyk*, 840 F.2d at 456. Brown's trial testimony was candid about his friendship with Taylor, about Taylor introducing to him the plan to steal a load of drugs, about Brown's willingness to join in so that he could "get some money

7

and maybe start [his] own business" (Taylor Tr. Day 3 at 28), about the trip to Fort Wayne, about the meeting in the hotel and the Codefendants' discussions after the meeting, and about the next day's events. Brown's trial testimony was consistent with the other evidence the Government presented at trial, including the testimony of other coconspirators, the testimony of the undercover agent who posed as the drug courier, the tape recordings, and the physical evidence (guns, vests, masks, gloves). Brown's testimony was corroborated by the testimony of Armstead, who was the other person Taylor recruited into the conspiracy and with whom he traveled to Fort Wayne. Armstead, Brown, and Taylor all rode in the same car to the storage unit on the day of their arrest, and Brown's and Armstead's testimony highlighted the same events and discussions that took place during the ride. Brown's testimony was also consistent with Codefendant Hightower's sworn statement that Barnes told him that Taylor would be a part of the robbery, and with Barnes's tape recorded statement to the confidential informant that "Mac Mel" was one of the guys that he would recruit to help him rob the load of cocaine.[1] Testimony that Taylor's purpose in coming to Fort Wayne was to participate in the robbery was further bolstered by testimony from Hightower, Armstead, and Jaquan Thomas that Taylor provided one of the firearms that police recovered when they arrested the Defendants.

Brown's Affidavit on behalf of Taylor, stating that he and Taylor did not have any knowledge of a drug amount or drug type, that they did not have any discussion about or knowledge of the conspiracy, and that they did not come to Fort Wayne to participate in it, defies

---

[1] During Taylor's trial, Brown testified that Melvin Taylor's nickname was Mack or Mac Mel. Hightower and Armstead testified that they knew his nickname to be Mac. Although Barnes testified at Taylor's trial that he said Mac Mal, and that this was not a reference to Melvin Taylor, he did not even know the real name of the "friend" he was purportedly referring to when he said "Mac Mal." The Court does not find Barnes's testimony on this matter to be credible.

8

the overwhelming evidence of Taylor's and Brown's knowing participation. Moreover, the Court has already determined that the explanation Brown provided when he attempted to recant statements regarding his own guilt, which he presented through motions requesting to withdraw his guilty plea, were without merit. These are the same reasons (namely, duress and coercion) that Brown provides now, and they fail for the same reasons stated in this Court's October 1, 2008, Opinion and Order [DE 383] denying Brown's requests to withdraw his guilty plea. The Court notes that this case does not present the recantation of an innocent, impartial eye witness, but of an active participant in the drug conspiracy. In recanting his prior testimony, Brown attempts not only to help Taylor, but also himself. To believe his statements in his Affidavit, the Court would have to find that his previous plea colloquy statements, his sworn trial testimony, and the testimony of numerous other witnesses, both from coconspirators and from members of law enforcement, were false.[2] Brown's recantation is not trustworthy, and it cannot provide the basis for a new trial.

**2.** *Michael Alexander*

Taylor's other piece of "newly discovered" evidence is a letter purporting to provide the statements of Codefendant Michael Alexander denying that Taylor was part of the conspiracy and affirming his willingness to testify to that effect.

Even if these are Alexander's statements, they provide information that Taylor must have know before trial. Alexander states that Taylor's reason for being in Fort Wayne was to visit his

---

[2] Indeed, the only person who submitted any testimony consistent with Brown's Affidavit was Barnes, who Taylor called to testify at his trial. The Court finds, consistent with the jury's verdict, that based on all the other evidence presented in the case and the demeanor of Barnes while testifying, Barnes's testimony at Taylor's trial was false.

9

cousin and uncle and that in "no way was he planning, plotting or conspiring to rip off druggs [sic]," and that "Taylor fell asleep in the hotel meeting." (Alexander Letter, DE 398-2.) Since these statement are made by a known coconspirator, and they are about *Taylor's own actions*, they do not constitute evidence discovered "only after trial." *Bender*, 539 F.3d at 456. Rather, Taylor would have been well aware of his own reasons for coming to Fort Wayne and whether he fell asleep during the hotel meeting: Taylor could have presented the facts contained in Alexander's letter by calling him as a witness at trial.

If Taylor's argument is that the "newly discovered" evidence is the fact that Alexander would now testify (truthfully) to these things if called to the stand, the Court finds that it is problematic for reasons explained in *United States v. Turns*, 198 F.3d 584 (6th Cir. 2000). That court observed:

> A witness's shifting desire to testify truthfully does not make that witness's testimony "newly discovered" evidence. *See, e.g.,* [*United States v.*] *Glover*, 21 F.3d [133,]138 [6th Cir. 1994)]. Defendants and their counsel frequently have to make strategic choices as to whether to call certain witnesses who have credibility problems or might not testify truthfully. Our system of justice relies, in large part, on the theory that when a person takes the witness stand and swears to tell the truth, that he or she will in fact do so. Whether or not a witness will testify truthfully if called to the stand is simply not "evidence" that can be used as a basis to invoke Rule 33 of the Federal Rules of Criminal Procedure.

198 F.3d at 587–88; *see also United States v. Theodosopoulos*, 48 F.3d 1438, 1448–50 (7th Cir. 1995) (concluding that post-trial testimony of person who exercised his Fifth Amendment right against self-incrimination to avoid testifying during trial does not qualify as "newly discovered evidence" because the defendant knew the substance of his testimony during trial). Adopting the majority rule that "newly available evidence" is not synonymous with "newly discovered evidence," the Third Circuit has reasoned:

> Courts generally consider exculpatory testimony offered by codefendants after they have been sentenced to be inherently suspect. Indeed, a court must exercise great caution in considering evidence to be newly discovered when it existed all along and was unavailable only because a co-defendant, since convicted, had availed himself of his privilege not to testify. The rationale for casting a skeptical eye on such exculpatory testimony is manifest. It would encourage perjury to allow a new trial once co-defendants have determined that testifying is no longer harmful to themselves. They may say whatever they think might help their co-defendant, even to the point of pinning all the guilt on themselves, knowing they are safe from retrial. Such testimony would be untrustworthy and should not be encouraged.

*United States v. Jasin*, 280 F.3d 355, 365 (3d Cir. 2002) (internal quotations marks and citations omitted). Although this case presents a slightly different scenario, the same rationale applies. Alexander, for whatever reason, did not testify on behalf of Taylor at Taylor's trial and only made exculpatory statements after receiving his own sentence, which included benefits for agreeing to cooperating with the Government. Alexander's proffered testimony on behalf of Taylor, which essentially attempts to take all the blame, is no longer harmful to his potential sentencing reductions and agreements. His testimony would be untrustworthy.

Moreover, the skepticism that attaches to traditional recantations applies here. Alexander's letter purports not only to aid Taylor, but also his brother, Barnes, who was also convicted by a jury. (Alexander Letter, DE 398-2 (stating that he is involved in the same case in federal court as Melvin Taylor and Marlyn Barnes and that his "testimony at their trails [sic] would have been instrumental in their acquittal")). The Seventh Circuit has instructed:

> The courts generally view recantations very skeptically and with suspicion. *See United States v. Griffin*, 84 F.3d 912, 929 (7th Cir. 1996); *United States v. Badger*, 983 F.2d 1443, 1456 (7th Cir. 1993); *United States v. Kamel*, 965 F.2d 484, 494 n.25 (7th Cir. 1992). This is especially true, as in cases such as this, where the witness who is recanting has already received a benefit—in the form of immunity from prosecution or the government's recommendation of a reduced sentence to the trial court in return for testimony given at trial—and in addition has an ongoing personal relationship with the defendant.

*United States v. Ogle*, 425 F.3d 471, 478 (7th Cir. 2005). Alexander's absence at trial was not because he refused to testify, but because the Government decided not to elicit his testimony despite his agreement to cooperate. For this reason, the Government gave Alexander benefits at sentencing similar to (if not the same as) those he would have received if he had testified. Additionally, he is related to one of the Defendants whom he has tried to help with his letter.

Moreover, Taylor does not establish that calling Alexander would have probably led to an acquittal. His statements would have been highly suspect given that he pleaded guilty to conspiring with Taylor and the other Codefendants, and agreed to testify in the trial of his coconspirators if called by the Government. Alexander's only attempt to address how Alexander would explain this to a jury is his pronouncement in his letter that his guilty plea to his own "personal situation" should not have had a "bearing on [Barnes and Taylor]." (Alexander Letter, DE 398-2.) Alexander appears to ignore the fact that he pleaded guilty to conspiring with the other Codefendants, and that during his plea colloquy he did not disagree with the Government's summary of the evidence that it would present at trial.

Even if Alexander would have been able to offer some explanation for negating his plea colloquy statements about the conspiracy and had testified consistent with the letter attached to Taylor's Motion, his statements would have contradicted other reliable evidence presented at trial. Even ignoring the testimony of Brown, the other evidence (testimony of the undercover agent, and recording of the hotel meeting and events of the next morning outside the hotel) establishes that Alexander is not being truthful in his letter when he says that Taylor was not planning to rip off drugs and fell asleep during the hotel meeting. For example, the video of the hotel meeting shows Taylor ignoring incoming phone calls, turning down the television volume,

shaking hands with the undercover agent, being attentive to the undercover agent, and participating in the conversation by asking questions. Alexander's purported testimony would not have probably led to an acquittal in the event of a retrial and cannot provide the basis for a new trial.

**CONCLUSION**

For the foregoing reasons, Taylor's Motion for New Trial [DE 398], and Amended Motion for New Trial [DE 410] are DENIED. A separate docket entry will set a date for the Defendant's sentencing hearing.

SO ORDERED on April 1, 2009.

s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT