# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:06-CR-23-TS |
| | ) | |
| MELVIN TAYLOR | ) | |

## OPINION

On April 18, 2008, the Defendant, Melvin Taylor, was convicted of conspiring to possess with intent to distribute more than 5 kilograms of a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 846 when he knowingly and intentionally agreed with others to rob a shipment of cocaine from a stash house. The jury also found Taylor guilty of carrying a firearm during and in relation to a drug trafficking offense, and possessing a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c). On May 4, 2009, the Court sentenced the Defendant to 188 months of imprisonment for the conspiracy offense and 60 months for the firearm offense. The Guideline range for the conspiracy (188 to 235 months of imprisonment) was determined using forty kilograms of cocaine. On April 8, 2010, the Court of Appeal for the Seventh Circuit vacated the sentence and remanded for re-sentencing. *See United States v. Taylor*, 600 F.3d 863 (7th Cir. 2010) (mandate filed in district court on April 30, 2010). The Seventh Circuit remanded because the district court had already accepted factual stipulations for use in sentencing other co-conspirators that set the drug quantity between 5 and 15 kilograms of cocaine. *Id.* at 871–72 (holding that without justifying the discrepancy in drug amounts, it was clear error to find one drug quantity for other co-conspirators and a different drug quantity for Taylor on an identical record). On March 4, 2011, the Defendant came before the Court for re-sentencing. This Opinion resolves the issues that were raised in the parties' sentencing briefs and

asserted at the sentencing hearing.

In his post-remand Sentencing Brief [ECF No. 509], the Defendant urges the Court to sentence him based on a quantity of cocaine of 25 grams or less or, alternatively, 2 to 3.5 kilograms. In support of these drug quantities, he argues that his conviction stems from a reverse sting operation involving fictitious drugs in an amount that was determined by the Government, and that he was not capable of producing any quantity of drugs. He also contends that he was involved in a smaller portion of the conspiracy that involved between 2 to 3.5 kilograms of cocaine. Finally, the Defendant maintains that the § 3553(a) sentencing factors justify a "minimum sentence." (Def. Taylor's Sentencing Br. 6.)

In response, the Government argues that the jury's verdict supports a finding of between 5 and 15 kilograms, and that there is no factual support for the Defendant's claim that the Government exercised exclusive control over the amount of drugs involved. The Government asserts that the Defendant was not required to produce any drugs, but that his offense was conspiring to possess them. At the Defendant's re-sentencing hearing, the Government also asserted that the Defendant's argument for less than five kilograms has been waived on the basis of his statements at the original sentence hearing and his position on appeal. The Government submits that, ultimately, the Defendant should receive the same sentence that the Court imposed for Count 1 at his first sentencing hearing, 188 months of imprisonment.

A.  **Quantity of Drugs Involved in the Conspiracy**

The Seventh Circuit remanded this case for the Court to re-sentence the Defendant because the Court relied on a drug quantity that conflicted with the drug quantity used to

calculate the sentence of his co-conspirators, without providing an explanation for the differing treatment. The appellate court noted that the district court could have rejected the factual stipulations in the plea agreements for the cooperating defendants if it believed that the stipulations were not supported by the evidence, but that it did not question those stipulations. Although this statement is true, it is also true that at the time of Defendant Taylor's sentencing, the Court did not have the authority to alter the amount of drugs used to determine the advisory guideline ranges of these already sentenced Codefendants, even if those amounts were a compromise that did not accurately reflect the evidence. The Court still lacks this authority. Therefore, the only practical way to resolve the discrepancy in the factual findings is to find, for purposes of Defendant Taylor's base offense level, that the conspiracy involved between 5 and 15 kilograms of cocaine. Even if another viable option exists, this amount is fully consistent with the jury's finding and is justified by the evidence presented in this case.

In its opinion remanding this matter for re-sentencing, the Seventh Circuit acknowledged the following evidence that, although thin, "would probably be enough to support the factual finding that the conspiracy involved forty kilograms of cocaine:"

> To support the district court's finding that the conspiracy involved forty kilograms of cocaine, the government points to several key pieces of evidence on which the district court relied. First, Agent Lessner testified that he told all the parties in the hotel room meeting, including Taylor, that the cocaine would be in the fuel tank of the truck, which he compared to a dresser in the room roughly large enough to hold forty kilograms. This testimony was also supported by the videotape of that meeting. Taylor argues that this is not sufficient evidence to support the finding of forty kilograms because Agent Lessner only said that the drugs would fit in the fuel tank, but did not say that the drugs would fill the fuel tank. The government also points to the testimony of Armstead and Hightower. Armstead, Taylor's recruit to the endeavor, testified that he believed the quantity of drugs involved was forty kilograms when he agreed to participate. Hightower testified that Barnes told him that the heist involved fifty kilograms of cocaine.

3

*Taylor*, 600 F.3d at 871. The sufficiency of the factual support for using forty kilograms to determine the base offense level was not the issue that ultimately required remand. Rather, it was the added complication brought about by the sentencing of other co-conspirators on the basis of factual stipulations for between five and fifteen kilograms of cocaine. In light of the evidence in the record that supports a considerably greater quantity than five kilograms and the jury's finding that the conspiracy involved at least five kilograms, as well as the stipulations accepted for Taylor's co-conspirators, the Court finds, by a preponderance of the evidence, that the drug quantity for sentencing the Defendant is between five and fifteen kilograms.

The Court rejects the Defendant's argument that the Government, through the reverse sting operation, exercised exclusive control over the amount of drugs involved such that the Defendant's criminality has been overstated. This does not appear to have been an issue that the Defendant raised on appeal, and the Court of Appeals did not explicitly discuss it. In the absence of any special instructions, on remand a district court may address only (1) the issues remanded, (2) issues arising for the first time on remand, or (3) issues that were timely raised before the district and/or appellate courts but which remain undecided. *United States v. Morris*, 259 F.3d 894, 898 (7th Cir. 2001) (describing the law-of-the-case doctrine which requires a district court to confine its discussion to the issues remanded and barring it from addressing issues that could have been raised on appeal); *see also United States v. Husband*, 312 F.3d 247, 250–51 (7th Cir. 2002) (stating that issues that could have been but were not raised on appeal are waived and thus not remanded).

Even if this issue were proper to address on remand because it relates to the drug quantity, the Court would not find it to have any merit. In the background section of the Seventh

Circuit's opinion, it noted that the government agent and the confidential informant "intentionally never indicated the exact quantity of drugs that would be involved in the shipment because drug couriers would not normally know that information." *Taylor*, 600 F.3d at 866. Despite this, the audiotapes of the meetings capture Codefendant Marlyn Barnes making various assumptions about the quantity of drugs involved, ranging from twenty to eighty kilograms. *Id.* Likewise, in the appeal filed by Barnes, the Seventh Circuit noted that the drug amounts were those assumed by the Defendant with "little guidance" by the government agent and informant regarding the amount of drugs involved. *United States v. Barnes*, 602 F.3d 790, 792 (7th Cir. 2010). Defendant Taylor then operated on these assumptions when he joined the conspiracy and when he recruited two other members, one of whom testified that "prior to going to Fort Wayne, he understood this to be a 'lifetime deal' involving about forty kilograms of cocaine.'" *Taylor*, 600 F.3d at 866. Accordingly, there is no basis to discount the drug amount as an exaggeration of the seriousness of the Defendant's offense.

The Defendant's argument that there was no proof that he was capable of producing the amounts of cocaine by successfully robbing the stash house is also without merit. The Defendant cites *United States v. Ruiz*, 932 F.2d 1174, 1184 (7th Cir. 1991), in support of his argument that the Court cannot rely on braggadocio as the basis for a sentencing determination. In *Ruiz*, the question was whether a stray comment could be considered negotiation of a specific drug quantity. *See also United States v. Bonilla-Comacho*, 121 F.3d 287, 292 (7th Cir. 1997) (characterizing the statements in *Ruiz* as an example of mere puffery that is distinguishable from true negotiation). At the time, the Guidelines provided that the offense level for a conspiracy involving drugs was to be the same as if the object of the conspiracy had been completed.

U.S.S.G. § 2D1.4(a) (Amended version effective Nov. 1, 1989). The commentary to that Guideline section explained that "[i]f the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount." Application Note 1 to § 2D1.4(a) (Amended version effective Nov. 1, 1989). The Note went on to state that "where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount it finds the defendant did not intend to produce and was not reasonably capable of producing." *Id.* This case, in contrast to *Ruiz*, did not involve any negotiation or require the Defendant to produce any drugs. Even if cases like *Ruiz* discussing the difference between braggadocio and true negotiation can be adopted to the circumstances of this case, the evidence is that the Defendant agreed with others to rob a stash house to obtain drugs, was prepared to carry out the plan, and expected to be successful in the execution of the plan. He was not puffing when he indicated, and then demonstrated, his willingness to obtain the shipment of drugs by force. He anticipated that the stash house would be armed and took this factor into account in his plan, arriving in Fort Wayne with firearms, ammunition, and additional people who were willing to help him carry out the plan. He met with the other conspirators to discuss the details of the plan, including who would enter the stash house and who would stand guard. Whether the coconspirators would have been successful in robbing an actual stash house is beside the point. It is the Defendant's planning that constitutes the punishable conspiracy under § 846. *See United States v. Corson*, 579 F.3d 804 (7th Cir. 2009). Moreover, there is no evidence to suggest that the quantity of drugs that he anticipated would be inside the house was unreasonable for a cocaine shipment

arriving from Texas. The evidence admitted at trial in this case supports the conclusion that the Defendant expected that the stash house he was preparing to rob would contain a large load of cocaine that had just arrived from Texas, and that the results would be very lucrative for him and his co-conspirators.

The Defendant argues that if the Court does not accept 25 grams as a drug quantity upon which to base his sentence, that it should sentence him based upon an amount of cocaine between 2 and 3.5 kilograms. He submits that because two of the co-conspirators were sentenced on the basis of between 2 and 3.5 kilograms, and two others were assessed quantities between 5 and 15 kilograms, the Government must believe that there were different parts of the conspiracy. He contends that because of this disparity and the "lack of evidence from which a determination can be made with any degree of reliability" he should be sentenced to the lower amount. (Sentencing Brief 5, ECF No. 509.) For reasons stated above, Defendant Taylor is mistaken that there is no evidence from which a determination can be made with any degree of reliability. The Government has established, by a preponderance of the evidence, that the conspiracy to possess with intent to deliver cocaine involved, at least, between 5 and 15 kilograms of cocaine.

The corresponding base offense level for between 5 and 15 kilograms of cocaine is 32. The adjustments for the Defendant's role in the offense (+2) results in an offense level of 34, which combined with his criminal history category yields an advisory guideline range of 151 to 188 months of imprisonment.

**B.    Section 3553(a)**

The Defendant contends that the Court should consider his lack of criminal history and

7

participation in the Federal Job Corp Program in 2001 to earn a vocational diploma when determining the appropriate sentence. Regarding the offense, he submits that he was not involved in the foundational work of the plan and that there is no suggestion that the two people he recruited to the conspiracy did so by any arm twisting on his part. He contends that there is no reason to doubt that he would benefit from and respond positively to supervision.

The Government asks the Court to consider that the offense carried a high risk of injury and potential for violence, that the Defendant provided a firearm with a 30 round capacity clip that he had a friend illegally purchase, that the Defendant was out on bond for dealing in cocaine charges when he committed the offense in Fort Wayne, and that police found 9 ounces of cocaine in a hidden compartment in the car the Defendant drove to Fort Wayne. The Government notes that the Court considered the other conspirators lower drug quantities when it originally sentenced the Defendant to 188 months of imprisonment, and that 188 months remains the sentence that is necessary to provide just punishment, reflect the seriousness of the offense, provide deterrence, and protect the community from acts of the Defendant.

Having considered the characteristics of this Defendant and the circumstances of the offense, the Court finds that a sentence of 188 months is sufficient but not greater than necessary to meet the purposes of punishment. Although the Defendant may believe that a remand would justify a lower sentence that the one he initially received, the Court, when it first imposed the 188-month sentence considered that the amount of drugs used to determine the sentences of other Codefendants involved in the same conspiracy was less than 15 kilograms. It was for this reason that the Court sentenced the Defendant to low end of the advisory range that had been calculated using forty kilograms of cocaine. Other than the drug quantity disparity being taken

8

into account in the calculation of the advisory Guideline range, as opposed to being a consideration under § 3553(a), the circumstances of this case remain the same. Even with a lower drug amount, the sentence is necessary, first, to reflect the seriousness of the offense. This case involved a plan to carry out the armed robbery of other armed individuals, which by its nature, carried a high risk of injury or death. The Defendant also anticipated selling large quantities of drugs into the community. The fact that the Defendant had a high capacity weapon further speaks to the violent potential of his crime and his willingness and preparedness to engage in that violence. The planning and preparedness involved in this offense also presented numerous opportunities for the Defendant to decide not to go through with the robbery, but the Defendant made no indication that he was hesitant to go through with the high-risk plan.

Second, the sentence is necessary to promote respect for the law and to protect others from the Defendant's crimes. The Defendant not only shunned the law for his own gain, as a quick get-rich scheme, but recruited others into the criminal activity and provided their transportation to Fort Wayne, all while he was out on bond for dealing in cocaine charges in Gary, Indiana. The Defendant exhibited further disregard for the law when he had a friend straw purchase a firearm for him and when he attempted to benefit from the knowingly false and material testimony that Codefendant Barnes offered during the trial of the Defendant.

In contrast, there are no mitigating factors that suggest a sentence of 188 months is greater than necessary to accomplish the purposes of punishment. The Defendant notes that he participated in the Federal Job Corp Program and was employed at a cabinet company. The Defendant's participation in the Job Corp ended in 2001 as did his employment and the Defendant does not indicate what he did from 2001 until May 2006 when he conspired to

9

possess with intent to distribute cocaine. His PSR indicates that he reported to the probation officer that he cut hair and did minor repair work on cars after leaving the Job Corp and returning to Gary. The Court notes that Vernell Brown, whom the Defendant recruited to take part in the robbery, met the Defendant while they were both in the Job Corps. The Court does not find the Defendant's vocational training and minimal employment to be a mitigating factor that justifies reducing his sentence. The Defendant's lack of criminal history, which he also points to as a mitigating factor, is already accounted for in his advisory Guideline range and in this Court's imposition of 188 months of imprisonment.

## CONCLUSION

For the foregoing reasons, the Court sentences the Defendant to 188 months of imprisonment for his conviction on Count 1 of the Indictment. He is sentenced to a consecutive term of 60 months of imprisonment for Count 4.

ENTERED: March 4, 2011.

s/ Theresa L. Springmann  
THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT