# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:06-CR-23-TLS |
| | ) | (1:12-CV-303-TLS) |
| MELVIN TAYLOR | ) | |

## OPINION AND ORDER

This matter is before the Court on the Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 571], filed on September 4, 2012, the Government's Response in Opposition [ECF No. 575], and the Defendant's Response to Government's Opposition [ECF No. 577].

## BACKGROUND

On May 24, 2006, the Government charged Melvin B. Taylor, along with co-conspirators Marlyn J. Barnes, Vernell A. Brown, Michael D. Alexander, Theodis Armstead, and Herbert Hightower, with conspiring to possess with intent to distribute more than 5 kilograms of a mixture or substance containing a detectable amount of cocaine. (Indictment, ECF No. 53.) The Defendant, Barnes, and Armstead were also charged with possessing a firearm in furtherance of the conspiracy. The charges were the result of an undercover drug sting in which a federal agent posed as a drug courier willing to help the Defendants rob a large shipment of cocaine that the undercover agent was supposed to be transporting from Texas to a stash house in Fort Wayne, Indiana. The six Defendants came together in Fort Wayne to further plan and carry out the robbery. They intended to bring the cocaine back to Gary, Indiana, and sell it.

On April 18, 2008, a jury convicted the Defendant of conspiring to possess with intent to

distribute more than 5 kilograms of a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 846 when he knowingly and intentionally agreed with others to rob a shipment of cocaine from a stash house. The jury also found Taylor guilty of carrying a firearm during and in relation to a drug trafficking offense, and possessing a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c). On May 4, 2009, the Court sentenced the Defendant to 188 months of imprisonment for the conspiracy offense and 60 months for the firearm offense. The Guideline range for the conspiracy (188 to 235 months of imprisonment) was determined using 40 kilograms of cocaine. On April 8, 2010, the Court of Appeals for the Seventh Circuit vacated the sentence and remanded for re-sentencing. *See United States v. Taylor*, 600 F.3d 863 (7th Cir. 2010) (mandate filed in district court on April 30, 2010). The Seventh Circuit remanded because the district court had already accepted factual stipulations for use in sentencing other co-conspirators that set the drug quantity between 5 and 15 kilograms of cocaine. *Id.* at 871–72 (holding that without justifying the discrepancy in drug amounts, it was clear error to find one drug quantity for other co-conspirators and a different drug quantity for Taylor on an identical record).

On March 4, 2011, the Defendant came before the Court for re-sentencing. In his post-remand Sentencing Brief, the Defendant urged the Court to sentence him based on a quantity of cocaine of 25 grams or less or, alternatively, 2 to 3.5 kilograms. In support of these drug quantities, he argued that his conviction stemmed from a reverse sting operation involving fictitious drugs in an amount that was determined by the Government, and that he was not capable of producing any quantity of drugs. He also submitted that he was involved in a smaller portion of the conspiracy that involved between 2 to 3.5 kilograms of cocaine. Finally, the

2

Defendant maintained that § 3553(a) sentencing factors justified a "minimum sentence." (Def. Taylor's Sentencing Br. 6.)

Because the jury found that the conspiracy involved at least 5 kilograms, and the evidence in the record supported a considerably greater quantity than 5 kilograms, the Court found, by a preponderance of the evidence, that the drug quantity for sentencing the Defendant was between 5 and 15 kilograms. This was also the quantity that some of the other members of the conspiracy stipulated was involved. The Court rejected the Defendant's argument that the Government, through the reverse sting operation, exercised exclusive control over the amount of drugs involved such that the Defendant's criminality has been overstated. The corresponding base offense level for between 5 and 15 kilograms of cocaine was 32. The adjustments for the Defendant's role in the offense (+2) resulted in an offense level of 34, which combined with his criminal history category of I yielded an advisory guideline range of 151 to 188 months of imprisonment. The Court considered, and rejected, the Defendant's argument that mitigating factors supported the imposition of a sentence of 60 months imprisonment for the drug conspiracy. The Court, in consideration of the history and characteristics of the Defendant and the circumstances of the offense, determined that a sentence of 188 months, the high end of the advisory Guideline range, was sufficient but not greater than necessary to meet the purposes of punishment set forth in 18 U.S.C. § 3553(a).

The Defendant again challenged his sentence on appeal. The Court of Appeals affirmed the sentence, finding no procedural error and that the sentence imposed was reasonable. *United States v. Barnes*, 660 F.3d 1000 (7th Cir. 2011).

**DISCUSSION**

Section 2255 allows a person convicted of a federal crime to seek to vacate, set aside, or correct his sentence. This relief is available only in limited circumstances, such as where an error is of jurisdictional or constitutional magnitude, or where there has been an error of law that "constitutes a fundamental defect which results in a complete miscarriage of justice." *See Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004). Motions to vacate a conviction or correct a sentence ask a court to grant an extraordinary remedy to a person who has already had an opportunity of full process. *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006). A motion under § 2255 "is neither a recapitulation of nor a substitute for a direct appeal." *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995). Therefore, issues that were raised on direct appeal may not be reconsidered on a § 2255 motion absent changed circumstances. *Olmstead*, 55 F.3d at 319; *see also Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007). A court may deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

The Defendant raises four grounds for relief in his habeas motion. Two of the grounds are a challenge to the drug quantity that the Court used to determine his sentence. The Defendant raises one claim that his counsel was ineffective for failing to pursue a plea bargain for him. He also asserts, in a separate ground, that it was improper to enhance his offense level by two points for a managerial role, and that counsel was ineffective for failing to challenge the enhancement.

**A.     Grounds One and Two**

The Defendant argues that the Court did not give due consideration to the quantity of

drugs he was responsible for, or to his arguments that the government agent dictated the quantity of drugs. He maintains that this resulted in sentencing disparity among the co-conspirators.

The Defendant's challenges to the quantity of drug involved in his offense are not properly before the Court because the Defendant is attempting to use his § 2255 motion as a substitute for direct appeal. In his first appeal, the Defendant challenged the quantity of drugs used to determine his base offense level and his sentence. He was successful in securing a remand for re-sentencing. Upon remand, the Court considered the Defendant's request to sentence him based on different quantities of cocaine. The Court also addressed the Defendant's argument that his conviction stemmed from a reverse sting operation involving fictitious drugs in an amount that was determined by the Government, and that he was not capable of producing any quantity of drugs. The Court rejected the Defendant's argument that, because there was not evidence that he had the ability to successfully carry out his plan to rob a stash house, the Court should discount any drug amount over 25 grams. Finally, the Court considered, and rejected, his alternative position that he was involved in a smaller portion of the conspiracy that involved between 2 to 3.5 kilograms of cocaine. After identifying specific testimony and portions of the record, the Court determined that the conspiracy to possess with intent to deliver cocaine involved, at least, between 5 and 15 kilograms of cocaine, and that this amount was fully consistent with the jury's finding.

The Defendant filed a second appeal to challenge the sentence, arguing that the Court committed procedural error and imposed an unreasonable sentence. The Court of Appeals determined that the Defendant's sentence was based upon a correctly calculated Guideline sentence, and that the Court's analysis and justification for the term of imprisonment imposed

evinced a perception of fair sentencing and reasonableness. *Barnes*, 660 F.3d at 1010–11. In collaterally attacking the Court's finding regarding the drug amount, the Defendant takes issue with the fact that the Court did not conduct an evidentiary hearing to determine the drug quantity, believing that the Court's determination would have been different if it had conducted such a hearing. The Defendant's habeas motion is simply a rehashing of the arguments and issues surrounding the drug quantity that the Court has already considered, and which have been upheld on appeal. Therefore, it is not appropriate for habeas review absent a showing of changed circumstances.

Even if the Court considered the merits of the Defendant's arguments, it would find that they present no basis for vacating the sentence. "At sentencing, a district court need only make findings of fact, such as the quantity of drugs attributable to a defendant, by a preponderance of the evidence." *United States v. Davis*, 682 F.3d 596, 612 (7th Cir. 2012) (citing *United States v. Krasinski*, 545 F.3d 546, 551 (7th Cir. 2008)). The Court already had ample evidence in the record to determine the drug quantity by a preponderance of evidence, not to mention the jury's determination that the evidence established beyond a reasonable doubt that the Defendant was guilty of conspiring to possess with intent to distribute at least 5 kilograms of cocaine. *See United States v. Bequette*, 309 F.3d 448, 451 (7th Cir. 2002) ("[I]t seems incongruous to suggest that a jury's drug quantity finding, made using only admissible evidence and found beyond a reasonable doubt, is inadequate for sentencing guidelines purposes."). Moreover, this amount of drugs was assumed by the Defendant and his conspirators with "little guidance" by the government agent and informant, *Barnes*, 602 F.3d at 792, and certainly did not involve sentencing entrapment. *United States v. Garcia*, 79 F.3d 74, 75 (7th Cir. 1996) (stating that

sentencing entrapment takes place "when the government causes a defendant initially predisposed to commit a lesser crime to commit a more serious offense"). That this case involved a fictitious stash house and drugs does not prevent the Court from determining the quantity of drugs that were reasonably foreseeable as the object of the conspiracy. *See United States v. McKenzie*, 656 F.3d 688, 691 (7th Cir. 2011) (noting that, while "the precise amount of drugs to be seized in the robbery" may not have been "a determining factor in each defendant's decision to join the conspiracy, it is undeniable that all were under the impression that a vast quantity of drugs would be discovered at the fictitious stash house"). As the Court determined at the Defendant's re-sentencing, the evidence admitted at trial supports the conclusion that the Defendant expected that the stash house he was preparing to rob would contain a large load of cocaine that had just arrived from Texas, and that the amount of drugs was enough to make the robbery very lucrative for him and his co-conspirators. Thus, it was reasonably foreseeable to the Defendant that he was planning to rob at least 5 kilograms of cocaine, and there is no basis to vacate his sentence based on the Court's drug quantity determination.

**B.     Grounds Three and Four**

The Defendant asserts that the Court improperly assessed a 2-point managerial role sentencing enhancement. He argues that the evidence does not support the enhancement because he was in Fort Wayne for less than 24 hours, and Co-defendants Brown and Armstead testified that he did not exercise a supervisory role over them. The Defendant contends that his counsel's failure to challenge the enhancement on appeal was ineffective legal assistance. Additionally, the Defendant argues that his counsel's performance violated his Sixth Amendment rights because

7

he did not pursue a plea agreement for the Defendant.

Most claims for ineffective assistance of trial counsel can be properly raised for the first time in a § 2255 petition. *United States v. Taglia*, 922 F.2d 413, 418 (7th Cir. 1989). When trial counsel served also as appellate counsel, the raising of an ineffective assistance claim for the first time in a § 2255 motion is logical. To prove ineffective assistance, the defendant must establish that his attorney's performance fell below an objective standard of reasonableness (the "performance prong") and that his counsel's deficiencies prejudiced his defense (the "prejudice prong"). *Strickland v. Washington*, 466 U.S. 668, 688–92 (1984). The performance prong requires the defendant to specifically identify acts or omissions that form the basis of his claim of ineffective assistance. *Id.* at 690. Based on the totality of the circumstances, the Court must then determine whether the identified acts and omissions fall outside the range of professionally competent assistance. *Id.*

At the time of sentencing, the Defendant argued against application of the enhancement under U.S.S.G. § 3B1.1(c). The Court overruled the Defendant's objection to the PRS, finding that, under the relevant standards, that the Defendant was an organizer, leader, manager, or supervisor of at least one other participant, demonstrated by his actions in recruiting Co-defendants Brown and Armstead into the conspiracy, and making arrangements for them to get to Fort Wayne where the robbery was to take place. The Court noted that this placed his relative responsibility higher than that of the two individuals whom he recruited and also higher than the two participants that Co-defendant Marlyn Barnes recruited. The Defendant and Barnes were the only two participants who recruited others into the conspiracy. They were also the participants who, together, decided what each of the six conspirators' roles would be in obtaining the drugs

from the stash house and other destinations. Trial testimony established that, on the way to the robbery, Brown and Armstead expressed concern to Taylor that they were being followed, but Taylor decided to keep going. The Court also placed significance on the fact that the Defendant supplied one of the weapons and one of the bullet resistant vests for use in the robbery, which elevated his degree of participation in planning and organizing the offense compared to other of the Co-defendants. The Court concluded that, because the Defendant's relative responsibility was higher than the other participants (with the exception of Barnes who received a 4-level enhancement during his sentencing for his role in the offense), the 2-level enhancement was proper.

"The 'central concern' of § 3B1.1 is the defendant's relative responsibility for the commission of the offense. *United States v. Mendoza*, 576 F.3d 711, 717 (7th Cir. 2009) (citing *United States v. Howell*, 527 F.3d 646, 649 (7th Cir. 2008) (quoting *United States v. Skinner*, 986 F.2d 1091, 1097 (7th Cir. 1993))). Application Note 4 to § 3B1.1 lists seven factors that courts "should consider" when determining whether this adjustment is warranted. These include:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 n. 4. The Seventh Circuit has held that an enhancement for the defendants' role in the offense does not require an explicit finding that the defendant exercised control, so long as the criminal activity involves more than one participant and the defendant played a coordinating or organizing role. *United States v. Pira*, 535 F.3d 724, 730 (7th Cir. 2008); *United States v. Carrera*, 259 F.3d 818, 827 (7th Cir. 2001).

The Defendant's role in the conspiracy meets the requirements of § 3B1.1(c), and the Defendant does not present any basis upon which his counsel could have relied to challenge the enhancement. The Court finds that counsel's performance did not fall below an objective standard of reasonableness. "[C]ounsel does not render ineffective assistance by failing to pursue arguments that are clearly destined to prove unsuccessful, or by strategically choosing to pursue his client's strongest arguments and to forego marginal ones. *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991) (citations omitted). Although the Defendant asserts that the transcripts of the cross-examinations of Brown and Armstead reveal that he did not exercise any control or direction over them, the record does not show this.

Brown testified at trial that the Defendant told him about Barnes's plan to get some money by stealing a load of drugs, which he believed was cocaine. Brown admitted that he was interested in taking part in the plan so that he could get some money and maybe start his own business, so he agreed to ride with the Defendant from Gary to Fort Wayne. Brown stated that on May 4, 2006, the Defendant picked him up with Armstead already in the car, and they drove to Fort Wayne where the Defendant drove them to meet the other Co-defendants. His cross examination did not place any of these statement in doubt.

Armstead testified that it was the Defendant's idea to come to Fort Wayne, and that they came to Fort Wayne on May 4, 2006, for the purpose of meeting up with Barnes so they all could rob some drugs to take back to Gary. They picked Brown up before traveling to Fort Wayne in the Defendant's car. Armstead had never met Brown before they rode to Fort Wayne together. Armstead did not know where they were going, but relief on the Defendant to know where to meet Barnes. His testimony did not change on cross examination.

Additionally, it makes no difference to the analysis the amount of time the Defendant was present in Fort Wayne. Not only were all of the Defendants in Fort Wayne roughly the same amount of time, but the Defendant's recruitment of Brown and Armstead took place in Gary. Accordingly, the Defendant has not pointed to any evidence upon which counsel could have relied to make a reasonable objection to the enhancement, and the Defendant was not deprived effective assistance of counsel.

With respect to counsel's failure to secure a plea agreement for the Defendant, the Court likewise finds no deficiency in counsel's performance, and no prejudice to the Defendant. The sole basis for the Defendant's argument that his counsel should have obtained a plea agreement from the Government is that the main target of the investigation, Barnes, had been found guilty by a jury and all the other co-conspirators had entered pleas of guilty. He asserts that, under these circumstances, "there [is] no way a lawyer would not explore the option of a plea." (Def.'s Resp. 9, ECF No. 577.)

"[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012); *see also Lafler v. Cooper*, 132 S. Ct. 1376, 1387 (2012) (noting that "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel considering whether to accept it"). But, a defendant does not have a right to be offered a plea, or to have a judge accept it. *Frye* at 1410. Here, the Defendant has not presented any evidence that he informed his lawyer at any time that he considered pleading guilty, or that he did not want to go to trial. Thus, even though the Defendant appears to be arguing that it was unreasonable to go to trial, he presents no evidence that he was willing to

11

accept responsibility for the criminal offense at the time he proceeded to trial. At trial, his defense was that he was in Fort Wayne to visit family, not to rob a stash house. Even at the time of sentencing, when the Defendant was placing his objections to the PSR on the record, he continued to maintain his innocence. Neither has the Defendant indicated that his lawyer counseled against taking a plea or, conversely, advised him to proceed to trial. His Motion is silent on the issue of counsel's advice. In other words, there is nothing in the record to suggest that the Defendant would have accepted a plea agreement absent advice he received from his attorney. *See, e.g., Coleman v. United States*, 339 F. App'x 643, 645 (7th Cir. 2009) (noting that a defendant who faults his lawyer for a breakdown in plea negotiations must establish a reasonable probability that, if not for counsel's deficient advice, he would have accepted a plea offer). The record before the Court indicates only that the Defendant exercised his right to defend against the charges brought against him and try his case to a jury trial—despite the fact that his five Co-defendants had been adjudicated guilty. It presents nothing of the reason behind the decision. The Defendant has not presented adequate grounds to vacate his sentence or his conviction.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rule 11 of Rules Governing Section 2255 Proceedings. The substantial showing standard is met when "reasonable

jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks omitted). Where the district court has rejected the constitutional claim on the merits, "the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. A defendant is not required to show that he will ultimately succeed on appeal. *Miller-El v. Cockrell*, 537 U.S. 322, 337, 342 (2003) (stating that the question is the "debatability of the underlying constitutional claim, not the resolution of that debate"). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Slack*, 529 U.S. at 484.

Rule 11(a) permits a district court to direct the parties to submit arguments on whether a certificate of appealability should issue. Additional argument is not necessary here because no reasonable jurist could conclude that the Defendant did not already raise his challenges to the Court's determination of the drug quantity on direct appeal, or that the claims nonetheless have merit, or find the Court's assessment of the ineffective assistance of counsel claim debatable or wrong.

## CONCLUSION

For the reasons stated above, the Court DENIES the Defendant's Motion Under 28

U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 571], and DECLINES to issue the Defendant a Certificate of Appealability.

SO ORDERED on June 7, 2013.

 s/ Theresa L. Springmann  
THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT